J. C. O. MORSE *et al.* v. MARY P. PATTERSON.

1. LIVE STOCK, *Ownership of—General Rule—Title Undivested.* As a general rule, the owner of the mother is the owner of the offspring born during such ownership. This ownership would continue until divested by some contract, express or implied, between the owner and some other person. A person paying service fees and taxes, and rearing the stock with the consent or knowledge of the owner, does not thereby become vested with the title to the colts or any part thereof.

2. ——— *Evidence of Ownership—Demurrer.* Where a person bases the ownership to colts upon evidence that she owned the mother when they were born, the overruling of a demurrer to said evidence is not error. It is competent evidence to go the jury, and judgment should be rendered on their verdict if it is in other respects proper.

MEMORANDUM.— Error from Sumner district court; JAMES A. RAY, judge. Action in replevin by Mary P. Patterson against J. C. O. Morse and Henry Hahn. Judgment for plaintiff. The defendants bring the case to this court. Affirmed. The facts are stated in the opinion, filed October 23, 1895.

*W. W. Schwinn*, for plaintiffs in error.

*A. A. Richards*, for defendant in error.

37—APP.

The opinion of the court was delivered by

DENNISON, J. : This is an action in replevin, brought in the district court of Sumner county, Kansas, by Mary P. Patterson against J. C. O. Morse and Henry Hahn, to recover the possession of four horses of which she claimed to be the owner and entitled to the immediate possession, and which were unlawfully detained from her possession by the defendants. J. C. O. Morse claimed to be in possession by virtue of a writ of attachment issued to him from the district court of Sumner county, as sheriff of said county, in the case of H. C. Suttle against Ambrose Patterson, who was the husband of Mary P. Patterson, and Henry Hahn was holding the stock for the sheriff. The case was tried by a jury, and it returned a verdict for the plaintiff, and judgment was rendered thereon. The defendants bring the case here for review.

The plaintiffs in error contend that the district court erred in permitting the case to go to the jury, in overruling the motion for a new trial, and in rendering judgment on the verdict. The evidence discloses the fact that this defendant in error owned one sorrel mare, named "Daize;" that her father gave her a horse after she was married, and it was by her father-in-law traded for another horse which he traded for the sorrel mare "Daize;" that three of the horses in controversy were colts of "Daize," and one the colt of a daughter of "Daize;" that the mare was kept on the farm where the Pattersons lived, and that she was worked, fed and cared for by them the same as the other horses on the farm; that Patterson attended to the breeding of the mares and to settling the service fees and to paying the taxes on the stock; that he

sold two of the colts, and for at least one of them he took a note in his own name, and collected the money thereon and used it for paying his individual debts. The plaintiffs in error, in their brief, say :

"The husband and wife are two so far as their property rights are concerned, and it surely cannot be claimed that Ambrose Patterson would not have an interest in colts bred from a mare belonging to any third person under the same circumstances ; and as between his wife and his creditors, she is to be treated just as any third person. . . . As between Mr. and Mrs. Patterson, if a controversy had arisen between them as to the ownership of the stock in controversy, it seems to us that it could not be claimed that the evidence in this case showed that the husband had no interest in the stock. In the absence of a special agreement, and no attempt was made to show one in this case, it certainly cannot be said that Ambrose Patterson could not himself claim an interest in this stock."

It must be conceded that the general rule is that the owner of the mother is the owner of the offspring born during such ownership. This ownership would continue until divested by some contract, express or implied, between the owner and some other person. What was done in this case which would divest the title from the owner to any other person ? The plaintiffs in error claim that paying service fees and taxes, and rearing the stock with the consent or knowledge of Mrs. Patterson, gave Mr. Patterson an interest in it, but do not say whether it was one-fourth, one-third, one-half, three-fourths, or what interest. Some of these things might constitute a lien if proper steps had been taken to perfect it, and they might also be the basis for a suit to recover a money judgment in favor of Mr. Patterson against Mrs. Patterson, but certainly they create no title in Mr. Patterson.

The plaintiffs in error, in their brief, also say :

"We contend that it was the duty of the court, under the law, to direct the verdict for the defendants below. The court, by overruling the demurrer to the evidence and the motion for a new trial, decided in effect that as a matter of law the ownership of the mother of the stock in controversy gave title to the offspring without regard to any other fact or circumstance that might exist."

We must differ from this view. The court would only decide in effect that the defendant in error had offered some evidence tending to prove ownership and the right to possession, and that the evidence should be passed upon by the jury, and that the jury having found the facts in favor of the defendant in error, she was entitled to a judgment upon the verdict. The judgment of the court below is affirmed.

All the Judges concurring.